# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **FEDERAL WAREHOUSE CO.,** | : | |
| Plaintiff, | : | Case No. 2:08-cv-275 |
| v. | : | Judge Holschuh |
| **NATIONWIDE LIFE INS. CO., et al.,** | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Federal Warehouse Company filed suit against Nationwide Life Insurance Company, alleging breach of contract and vexatious delay in settling an insurance claim, and against RMTS, LLC, Nationwide's managing general underwriter, alleging tortious interference with contract. The Court's jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332. This matter is currently before the Court on Defendants' motion for judgment on the pleadings.

## I.    Background and Procedural History

Plaintiff Federal Warehouse Company ("Federal") has a self-funded employee benefit welfare plan (the "Plan"). HCH Administration, Inc. ("HCH") is the third-party administrator and adjudicates claims submitted under the Plan. Federal also had a Stop Loss Insurance Contract ("Contract") through Nationwide Life Insurance Company ("Nationwide"). Nationwide agreed to reimburse Federal for certain losses Incurred from July 1, 2005 through June 30, 2007 and Paid from July 1, 2006 through June 30, 2007. Covered losses included those exceeding the specific deductible for each Covered Person and those exceeding a specified annual aggregate amount. Defendant RMTS, Nationwide's underwriter, adjudicated claims submitted by HCH on Federal's

behalf.

A Covered Person ("Patient") died at St. Louis University Hospital at 4:18 p.m. on Saturday, June 30, 2007, the last day of the policy period. She had been hospitalized for several weeks leading up to her death. HCH knew that Patient's death was imminent. HCH also knew that the Contract expired on June 30, 2007, and that none of Patient's expenses would be covered under the new insurance contract, which had been purchased through a different company. Therefore, to ensure eligibility for reimbursement through Nationwide, on June 29, 2007, HCH procured an interim billing from the hospital. The bill for services incurred through June 28, 2007 was $498,742.71. On June 29, 2007, Federal transferred those funds into the Plan's account and HCH directed Advanced Business Fulfillment, Federal's third-party processing service, to process a check made payable to St. Louis University Hospital for the full amount owed. HCH also instructed Advanced Business Fulfillment to process additional checks in the total amount of $828.29 payable to Patient's other health care providers. Although the checks were prepared on June 29, 2007, they were not mailed until July 5, 2007. On July 6, 2007, HCH submitted its request for reimbursement to Nationwide on behalf of Federal. RMTS, on behalf of Nationwide, has refused to pay the claim. It maintains that because the checks were not mailed until July 5, 2007, after the Benefit Period ended, the claim was untimely.

In addition to the losses that exceeded the specific deductible for Patient, HCH also submitted a claim in the amount of $162,523.26 for reimbursement of losses in excess of Federal's aggregate deductible. RMTS and Nationwide paid $91,738.49, but have refused to pay the balance of $70,784.77, the amount specifically attributable to Patient.

Federal filed this action against Nationwide and RMTS in March of 2008. Federal alleges

that Nationwide breached its obligations under the Contract by failing to reimburse the Plan $331,912.76 for Patient's expenses,[1] and for failing to pay the balance due on the aggregate claim in the amount of $70,784.77. Federal also alleges that Nationwide's delay in paying these two claims is vexatious, justifying an award of attorney fees, costs and punitive damages. Finally, Federal alleges that RMTS tortiously interfered with Federal's contract with Nationwide. Defendants have moved for judgment on the pleadings.

## II. Standard of Review

Motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. See Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998); Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); Mixon v. Ohio, 193 F.3d 389, 399-400 (6th Cir. 1999). The purpose of a motion under either rule is to test the sufficiency of the complaint.

A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough).

---

[1] Although the interim bill was $498,742.71, HCH subsequently obtained a partial patient refund from the hospital pursuant to a preferred provider agreement. This leaves the balance owed as $331,912.76.

3

The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)(emphasis in original).

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  See Grindstaff, 133 F.3d at 421.  However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  Id.  Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged.  Iqbal, 129 S.Ct. at 1949-50.  The factual allegations must show more than a possibility that the defendant acted unlawfully.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 1949 (quoting Twombly, 550 U.S. at 557).  The Court will, however, indulge all reasonable inferences that might be drawn from the pleading.  See Fitzke v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

Judgment on the pleadings is appropriate if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.  Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

### III. Discussion

#### A. Breach of Contract Claims

In Count 1 of the Complaint, Federal alleges that Nationwide breached its obligations under

4

the Contract by failing to reimburse Federal $331,912.76 for Patient's claims and by refusing to pay the $70,784.77 balance due on the aggregate claim.

### 1. Unambiguous Language

Nationwide maintains that, pursuant to the unambiguous terms of the Contract, Patient's claim was not eligible for reimbursement because it was not "Paid" prior to the end of the Benefit Period. Nationwide also argues that, because Patient's claim was not eligible for reimbursement, the related portion of the aggregate claim was also properly denied. The Court agrees with respect to both claims.

The Contract defines the "**Benefit Period**" as "the period of time in which <u>a claim must be Incurred</u> by the Covered Person <u>and Paid</u> by the Plan to be eligible for reimbursement under the Policyholder's Stop Loss Contract." (Stop Loss Ins. Contract at 5; Ex. to Mot. Judg. Pleadings) (emphasis added). The Contract was a "claim paid" policy. The Benefit Period for this particular Contract was limited to "Covered Persons Employee Benefit Plan Losses Incurred from July 1, 2005 through June 30, 2007, and Paid from July 1, 2006 through June 30, 2007." Id. at 3.

"**Incurred** means the date on which the Services are Rendered or supplies are received by the Covered Person. For inpatient hospital/facility charges and professional fees provided during an inpatient stay a claim is considered incurred on the date the Covered Person is discharged from the hospital/facility." Id. at 5. The parties agree that, in this case, Patient was "discharged" from the hospital on the date of her death, June 30, 2007, and therefore that the Loss was "Incurred" on that date, within the Benefit Period.

They disagree, however, about whether the Loss was also "Paid" within the Benefit Period, as required for reimbursement eligibility. The Contract defines "Paid" as follows:

5

> **Pay, Paid, Payment** means actually funded by means of drafts, checks or electronic fund transfers that are **Issued** by the Policyholder, received by the payee and Honored. When the preceding requirements are met, the date of payment is the date the draft, check or electronic fund transfer is Issued, provided it is delivered and Honored within 30 days of the issued date. In the event the draft, check or electronic fund transfer is not Honored within 30 days of issue, the date of payment becomes the date the draft, check or electronic fund transfer is Honored.

Id. at 6 (emphasis added). The question here is whether Federal "Issued" the check to the hospital by June 30, 2007. If it did, then the claim was "Paid" within the Benefit Period. If it did not, then the claim is not eligible for reimbursement. The answer lies in the Contract's definition of "Issued."

> **Issued** means the date: (1) the Policyholder **directly tenders payment by mailing (or other method of delivery) to the payee a draft, check or electronic fund transfer**, and (2) the account upon which the draft, check or electronic fund transfer is drawn contains, and continues to contain, sufficient funds to permit the check or draft to be Honored.

Id. at 5 (emphasis added).

In this case, it is undisputed that Federal, on June 29, 2007, transferred funds into the Plan's account to pay all of Patient's then-pending claims. On that same date, Federal authorized payment of $498,742.21 to the hospital and $828.79 to other providers, and HCH instructed Advanced Business Fulfillment to process the checks. Although the checks were prepared and dated June 29, 2007, they were not mailed until July 5, 2007. The check to the hospital was Honored on July 17, 2007. It is not known when the other checks were Honored.

Nationwide maintains that because Federal did not "directly tender payment by mailing" the check to the hospital until July 5, 2007, the check was not "Issued" until that date. Consequently, pursuant to the unambiguous terms of the Contract, the Loss was not "Paid" within the Benefit Period and the claim, therefore, is not eligible for reimbursement.

The parties agreed that the Contract would be governed by the laws of the state of Illinois. Id. at 1. Under Illinois law, as elsewhere, insurance contracts must be liberally construed in favor of the insured. Addison Ins. Co. v. Fay, 905 N.E.2d 747, 753 (Ill. 2009). Ambiguities must be resolved against the insurer, particularly with respect to provisions that limit or exclude coverage. Rich v. Principal Life Ins. Co., 875 N.E.2d 1082, 1090 (Ill. 2007). Nevertheless, "[w]here the terms of a contract are clear and unambiguous, they must be enforced as written, and no court can rewrite a contract to provide a better bargain to suit one of the parties." Owens v. McDermott, Will & Emery, 736 N.E.2d 145, 154 (Ill. App. Ct. 2000).

Federal argues that the terms "Paid" and "Issued" are ambiguous and internally inconsistent and, therefore, must be interpreted to provide coverage. Federal correctly notes that a claim is not considered "Paid" unless it is (1) "funded," (2) "Issued by the Policyholder," (3) "received by the payee" and (4) "Honored." Federal argues that because "[t]he definition of 'Issued' in the Contract [also] includes a requirement of 'direct tender' (*i.e.*, delivery) to the payee" there is a redundancy between the second and third elements of the definition of "Paid." (Response at 6). In a similar vein, Federal argues that because the definition of "Issued" already incorporates a delivery requirement, the second sentence of the definition of "Paid," *i.e.,* "[w]hen the preceding requirements are met, the date of payment is the date the draft, check or electronic fund transfer is Issued, provided it is delivered and Honored within 30 days of the issued date," is rendered meaningless.

Federal then suggests that these alleged problems can be avoided entirely by interpreting "Issued" to mean "processed and funded" rather than "mailed." Under Federal's proposed construction, the check to the hospital was "Issued" in a timely manner. In addition, because the

check was "delivered and Honored" within 30 days after the date it was "processed and funded," the claim was "Paid" within the Benefit Period and is eligible for reimbursement.

There is no need to rewrite the Contract as Federal suggests. The alleged redundancies simply do not exist. Federal's argument hinges entirely on the faulty premise that to "directly tender payment" requires that: (1) the Policyholder place the check in the mail; *and* (2) the check be delivered to the payee. This interpretation is clearly contrary to the plain language of the definition of "Issued." Assuming that sufficient funds are available to permit the check to be Honored, the check is "Issued" on the date the Policyholder relinquishes control of it by placing it in the mail. Because there is no additional requirement that the check be delivered to the payee, there is no redundancy.

Federal also argues that the Contract contains a 30-day "grace period." The definition of "Paid" states, "[w]hen the preceding requirements are met, the date of payment is the date the draft, check or electronic fund transfer is Issued, provided it is delivered and Honored within 30 days of the issued date." Federal interprets this provision to mean that because the check was received by the hospital and honored within 30 days of June 30, 2007, the last day of the Benefit Period, the payment should be considered timely.

Federal again clearly misconstrues the plain meaning of the language. The clear purpose of this provision is to protect the Policyholder from being penalized when, through no fault of its own, the check is lost or delayed in the mail or there is some glitch in the electronic fund transfer. It provides that if the Policyholder has fulfilled its obligations, by ensuring that there are sufficient funds in the account, and by directly tendering payment by placing the check in the mail or taking appropriate steps to electronically transfer funds to the payee by the end of the Benefit Period, then

8

"the date of payment is the date the draft, check or electronic fund transfer is Issued, provided it is delivered and Honored within 30 days of the issued date." On the other hand, if the Policyholder has not Issued payment in a timely manner, then the 30-day "grace period" obviously does not apply. Contrary to Federal's interpretation, this provision does not extend the Benefit Period by an extra 30 days. The Contract clearly and unambiguously provides that the check must be "Issued" within the Benefit Period. This includes not only funding and processing the check, but also relinquishing control of it by placing it in the mail.

In summary, because the Contract terms are clear and unambiguous, and because it is undisputed that the checks in question were not mailed until July 5, 2007, five days after the Benefit Period ended, Federal's losses are not eligible for reimbursement. This includes that portion of the aggregate claim that it attributable to Patient.

### 2. Inadvertent Delay

The Contract provides that "Clerical error, inadvertent delay or omission in keeping any records pertaining to the coverage, whether by the Policyholder or by the Company, will not invalidate coverage otherwise validly in force nor continue coverage otherwise validly terminated, provided such clerical error, inadvertent delay or omission is not prejudicial to the Company and is rectified promptly upon discovery." (Stop Loss Ins. Contract at 8). In its Complaint, Federal alleges that the failure to put the checks in the mail until July 5, 2007 constitutes "inadvertent delay," a technical non-compliance excusable under this provision.

Nationwide maintains that this provision is inapplicable for several reasons and the Court agrees. Given the great deal of trouble that HCH and Federal went to on June 29, 2007 to ensure that Patient's expenses would be eligible for reimbursement, the Court questions how the delay in

9

placing the checks in the mail could possibly be considered "inadvertent." HCH and Federal were fully aware that unless the Loss was "Paid" within the Benefit Period, the Loss would not be eligible for reimbursement. But even if the delay could be considered "inadvertent," this provision excusing technical non-compliance applies only if the end result "is not prejudicial to the Company." Federal paid for coverage for Losses "Incurred" and "Paid" through June 30, 2007. To the extent that Federal now seeks to extend the Benefit Period beyond what was bargained for, this result would obviously be prejudicial to Nationwide.

### 3. Illusory Coverage

Federal also alleges that if the Contract is interpreted as urged by Nationwide, then the coverage provided is illusory. The Contract supposedly provides coverage through June 30, 2007. Federal alleges that this end date is illusory because in some situations, as here, where the loss is Incurred at the very end of the Benefit Period, it is virtually impossible for the loss to be "Paid," as that term is defined in the Contract, within the Benefit Period as required for reimbursement. As noted earlier, a loss is considered "Paid" when it is funded by means of a check Issued by the Policyholder, received by the payee and Honored. Federal maintains that there is no way all of these requirements can be timely met when the loss is not Incurred until the last day of the Benefit Period. Federal argues that this is especially true where, as here, the loss was Incurred late on a Saturday afternoon when the hospital's billing office and the banks are likely to be closed.

Federal, however, has again misread the clear and unambiguous language of the Contract. The Contract does not require the check to be Issued, received and Honored all within the Benefit Period. Rather, the loss is considered "Paid" within the Benefit Period merely if the check is Issued, *i.e.*, placed it in the mail, during the Benefit Period, provided that it is received by the payee and

10

Honored within 30 days thereafter.

The timing of Patient's death undoubtedly required very quick action by Federal. The Patient died late on a Saturday afternoon, the last day of the Benefit Period. Federal and HCH, however, were fully aware that Patient's death was imminent and that the Benefit Period was quickly coming to a close. The Contract clearly provided that the claim would not be eligible for reimbursement unless it was Paid by the end of the Benefit Period. Accordingly, on June 29, 2007, Federal and HCH obtained the interim bill from the hospital, transferred the necessary funds and directed their processing agent to issue the checks. Unfortunately, for Federal, the checks were not placed in the mail until July 5, 2007, rendering the losses ineligible for reimbursement.

The timing of Patient's death and the necessity to Issue the checks in a timely manner does not render the Contract illusory. "An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything." W.E. Erickson Const., Inc. v. Chicago Title Ins. Co., 641 N.E.2d 861, 864 (Ill. App. Ct.1994). This Contract was not illusory. It clearly and unambiguously required Nationwide to reimburse Federal for losses Incurred and Paid by June 30, 2007. Had Federal or HCH "Issued," *i.e.*, mailed, the checks on June 30, 2007, Nationwide would have been obligated to reimburse Federal as promised. Coverage for the last day of the Benefit Period was not rendered illusory simply because unusually quick action was required by Federal to comply with its obligations under the contract.

### 4. Estoppel/Course of Dealing

Federal also alleges that Nationwide is estopped from strictly enforcing the contractual language because, in the past, Nationwide has reimbursed Federal for losses incurred near the end of the Benefit Period, even though Federal mailed the checks after the Benefit Period had ended.

In its motion for judgment on the pleadings, Nationwide argues that the parties' past conduct is irrelevant because the terms of the Contract are unambiguous. The Court agrees. Under Illinois law, "[w]here a contract is clear and unambiguous. . . the conduct of the parties cannot be used to prove that the contract means something other than it says." Uscian v. Blacconeri, 340 N.E.2d 618, 621 (Ill. App. Ct. 1975). Having found that the Contract clearly and unambiguously required the check to be Issued, *i.e.*, placed in the mail, within the Benefit Period, the Court cannot consider extrinsic evidence of a prior course of dealings to change the terms and conditions of the Contract.

In addition, as Nationwide notes, the Contract contains the following Waiver provision which bars Federal's claim of estoppel:

> **Waiver:** Failure of the Company to insist upon the Policyholder's strict compliance with any requirement or condition of this Contract at any time or under any circumstance shall not constitute a waiver of such requirements or condition by the Company at any time under the same or different circumstances.

(Stop Loss Ins. Contract at 10). Regardless of whether Nationwide paid untimely claims in the past, it was not obligated to do so then and was not obligated to do so in this case.

### B.     Vexatious Delay

Count 2 of the Complaint alleges that Nationwide's refusal to pay the claims was vexatious and unreasonable. Federal seeks injunctive relief as well as costs, attorney fees and punitive damages pursuant to § 155 of the Illinois Insurance Code, 215 ILCS §5/155(1). But Federal concedes, in its response brief, that if the Court finds that Nationwide properly denied the claims for reimbursement, Count 2 must also be dismissed. See Martin v. Illinois Farmers Ins., 742 N.E.2d 848, 857 (Ill. App. Ct. 2000) ("a defendant cannot be liable for section 155 relief where no benefits are owed").

### C. Tortious Interference with Contract

In Count 3 of the Complaint, Federal alleges that RMTS tortiously interfered with Federal's Stop Loss Insurance Contract with Nationwide by denying coverage as part of a vendetta against HCH's clients. Federal seeks compensatory and punitive damages from RMTS. In order to succeed on this claim, Federal must prove: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 676 (Ill.1989) (internal quotation omitted).

Nationwide argues that because it properly denied Federal's claims, Federal cannot prove the requisite breach. The Court agrees that Count 3 is derivative of the breach of contract claim. Because the breach of contract claim fails, the tortious interference claim must be dismissed as well.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Defendants' motion for judgment on the pleadings (Doc. 39) and **DISMISSES** this action with prejudice. This renders **MOOT** Plaintiff's motion for summary judgment (Doc. 44) and Defendants' motion to stay briefing on the motion for summary judgment (Doc. 48).

**IT IS SO ORDERED.**

Date: May 24, 2010  **/s/ John D. Holschuh**
John D. Holschuh, Judge
United States District Court

13